IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANDREW KEVIN PRICE, )
)
Plaintiff, )
)
vs. ) Case No. 10-cv-0741-MJR-PMF
)
CARPENTERS' DISTRICT COUNCIL )
OF GREATER ST. LOUIS & VICINITY, )
EXECUTIVE COMMITTEE OF THE )
CARPENTERS' DISTRICT COUNCIL, )
TERRY NELSON, and )
ROBERT VOSBURGH, )
)
Defendants. )

MEMORANDUM AND ORDER
ISSUING PRELIMINARY INJUNCTION

REAGAN, District Judge:

A. Introduction and Procedural Overview

On September 24, 2010, Andrew Kevin Price filed suit in this Court alleging infringement of his free speech rights and retaliation in violation of Title I of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 411-415. Price's complaint seeks injunctive relief, compensatory damages, punitive damages, costs and attorney's fees from four Defendants: (1) the Carpenters' District Council of Greater St. Louis and Vicinity ("the Council"); (2) the Executive Committee of the Council; (3) Terry Nelson, the Executive Secretary/Treasurer of the Council; and (4) Robert Vosburgh, the Business Representative for the Council. With the complaint, Price filed a motion for temporary restraining order and preliminary injunction (Doc. 4).

The Court enjoys subject matter jurisdiction under the federal question statute, 28 U.S.C. § 1331. Price's motion for a temporary restraining order and preliminary injunction is fully briefed via supporting and opposing memoranda (Docs. 5, 12).

On the day Price filed the motion, the Court set a status conference for September 28, 2010 (see Doc. 6). But prior to that date, notice was given, counsel entered on behalf of Defendants, and defense counsel filed a thorough memorandum opposing Price's motion (complete with affidavits, exhibits and other documents). With agreement of counsel, the Court converted the status conference to a hearing, proceeded past the TRO request, and entertained the motion for preliminary injunction.

B. Summary of Key Facts, Allegations and Arguments[1]

Price is a dues-paying member and elected delegate of Local 638 of the Carpenters District Council of Greater St. Louis and Vicinity. The Council, a labor organization as defined under the LMRDA, represents various Carpenters local unions throughout Missouri and Southern Illinois , including Local 638. Historically, the Council represented carpenters, millwrights, cabinet workers and flooring installers. In 2008, the Council, under the direction of Defendant Nelson, chartered a new affiliate called "Local 57." Local 57 was formed as the Council's electrical division.[2]

---

1 These are taken from the pleadings and other materials before the Court, as well as the arguments of counsel from the September 28, 2010 hearing.

2 The affidavit of Albert Bond, Assistant Executive Secretary-Treasurer of the Council, details the jurisdictional disputes that arose in 2007 and 2008 between the Carpenters' District Council and Local 1 of the International Brotherhood of Electrical Workers (IBEW) which resulted in the Council

The Council then signed several non-union electrical contractors to labor agreements. The Council has dedicated union resources to promoting Local 57. The Council's support for Local 57 has been a topic of considerable discussion and severe disagreement within the union. Nelson, the Executive Secretary/Treasurer of the Council who also serves on the Executive Committee of the Council, has vocally *supported* Local 57. Certain carpenters support Local 57. Other rank-and-file Carpenters' members, including Price, *oppose* Local 57.

Indeed, Price has a history of opposing the union leadership and policies of Terry Nelson. In the summer of 2010, as an expression of his opposition to Nelson's policies and Local 57, Price put an anti-Local 57 sticker on his personal truck.[3] What followed lies at the heart of this litigation and of the motion now before this Court.

On August 9, 2010, Price was working as a carpenter at Chili's Restaurant in Carbondale, Illinois for Schimpf Construction when Business Representative Vosburgh told Price to take the sticker off his truck. Price told Vosburgh he would "think about it." Vosburgh returned the following day and told Price that if he did not remove the "anti-57 sticker," he would be brought up on union charges. Price did not remove the sticker, and Vosburgh filed charges (see Vosburgh Affidavit, Doc. 12-12).

---

forming its own electrical branch, which ultimately became Local 57 (see Doc. 12-1).

3 The image on the sticker is a white circle with a blue border, a large blue number "57" in the center, a red slash through the 57, and the words "Who's Next" under the 57 (see Exhibit 1 to Complaint, Doc. 2).

A letter dated August 10, 2010 and signed by Nelson advised Price that he had been charged with violating District Council Trade Rule 22 (Paragraph J) plus Section 51 (Paragraph A-1 and A-13) of the General Constitution of the United Brotherhood of Carpenters (General Constitution). Specifically, Price is charged with failing to remove the sticker as instructed by Vosburgh (thereby violating Trade Rule 22) and "causing dissension amongst the Brotherhood" (thereby violating the General Constitution)(see Exhibits 2 and 3 to Complaint; Doc. 2-2, pp. 1-2).

Under the General Constitution, the Executive Board of the District Council reviews all charges filed against a member and may (a) reprimand the member (but cannot impose penalties), (b) refer the charges to trial, or (c) adopt a procedure in which the accused pleads guilty and pays a fine.

On September 14, 2010, Price appeared before the Executive Board on the charges against him and again voiced his opposition to Local 57.[4] By letter dated September 17, 2010, Nelson notified Price that he would stand trial on the charges October 19, 2010, conducted by a standing Trial Committee. Under the General Constitution, the Trial Committee can recommend, and the District Council can approve, a fine against Price. If a fine is imposed, Price can appeal to the International Union.

---

4 Price also alleges that on September 15, 2010, his employer (Rod Schimpf of Schimpf Construction) informed Price that he was laid off work. Defendants have submitted an affidavit from Rod Schimpf attesting that Price was laid off on September 14 for reasons having "nothing to do with his dispute" with the Council (Doc. 12-11).

Facing the October 19, 2010 trial, and claiming that Defendants have deliberately squelched dissent from him and other union members by prosecuting the internal union charges against him and chilling the rights of expression from those who oppose Local 57, Price seeks a preliminary injunction from this Court.

Specifically, Price asks the undersigned Judge to (1) order Defendants to cancel the October 17, 2010 trial, (2) order Defendants to refrain from further processing the charges against him, (3) enjoin Defendants from prosecuting similar charges against him or other union members who wear anti-Local 57 stickers or voice Local 57 opposition, and (4) enjoin Defendants from infringing on his free speech rights or retaliating against him for exercising those rights (Doc. 4, p. 3).

C. Analysis

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. ***Winter v. Natural Resources Defense Council, Inc.*, – U.S. –, 129 S. Ct. 365, 374 ( 2008).**

The United States Court of Appeals for the Seventh Circuit articulates the requirements for issuance of a preliminary injunction this way:

> To justify a preliminary injunction, the plaintiffs must show that they are likely to succeed on the merits, that they are likely to suffer irreparable harm without the injunction, that the harm they would suffer is greater than the harm that the preliminary injunction would inflict on the defendants, and that the injunction is in the public interest....

> These considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted.

***Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010), *citing Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009). *See also Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380 (7th Cir. 1984).**

Some decisions interpret this analysis as consisting of a "threshold phase" in which the movant must satisfy three requirements and, if that showing is made, a "balancing phase" in which the court attempts "to minimize the cost of potential error." ***Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).**

In the instant case, working through the "threshold phase," having carefully reviewed the evidence and heard counsel's arguments, the Court **FINDS** that absent a preliminary injunction, Price will suffer irreparable harm "in the interim period prior to final resolution of [his] claims," that traditional legal remedies would be inadequate, and that his claim "has some likelihood of succeeding on the merits." ***Girl Scouts* at 1086.**

As to the irreparable injury and inadequate remedy at law, the federal courts have consistently held that the potential chilling effect on free speech constitutes a clear threat of irreparable harm, for which there is no adequate legal remedy. Indeed, in ***Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006),** the Seventh Circuit stressed: "The loss of First Amendment freedoms is *presumed* to constitute an irreparable injury for which money damages are not adequate, and injunctions protecting

First Amendment freedoms are always in the public interest." ***Id.* (emphasis added), *citing Joelner v. Village of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004), and *Elrod v. Burns*, 427 U.S. 347, 373 (1976)("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). *Accord Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998).**

Plaintiff has met his burden of demonstrating that he will suffer irreparable harm in the absence of preliminary injunctive relief and that he lacks an adequate legal remedy. The pending charges target his protected expression, and the anxiety of the trial and potential fine inhibit his speech. Defendants' actions also have a chilling effect on the speech of other union members who may want to voice their opposition to Local 57 but fear that they risk being subjected to charges and trial, like Plaintiff Price – who is an elected delegate serving on the District Council.

As the United States Supreme Court declared in the context of the discipline and ultimate removal of an elected union official:

> [T]he potential chilling effect on Title I free speech rights is more pronounced when elected officials are discharged. Not only is the fired official likely to be chilled in the exercise of his free speech rights, but so are the members who voted for him.... Seeing Lynn removed from his post just five days after he led the fight to defeat yet another dues increase proposal, other members of the Local may well have concluded that one challenged the union's hierarchy, if at all, at one's peril.
>
> This is precisely what Congress sought to prevent when it passed the LMRDA. "It recognized that democracy would be assured only if union members are free to discuss union policies and criticize the leadership without fear or reprisal."

***Sheet Metal Workers' International Association v. Lynn*, 488 U.S. 347, 355 (1989), *quoting United Steelworkers of America v. Sadlowski*, 457 U.S. 102, 112 (1982).** Irreparable injury and inadequate legal remedy have been demonstrated here.

Next, the Court finds that Price has a reasonable likelihood of success on the merits. Section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2), provides:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings.

In a recent unreported opinion (which discusses Supreme Court cases interpreting the LMRDA), the Seventh Circuit explained the goal of this provision. Title I of the LMRDA developed from legislation "aimed at enlarged protection for members of unions paralleling certain rights guaranteed by the Federal Constitution," and restates "a principal First Amendment value-the right to speak one's mind without fear of reprisal." ***Marshall v. Local 701 Intern. Broth. of Elec. Workers*, – F.3d –, 2010 WL 2853348 at *3 (7th Cir. July 21, 2010), *citing Finnegan v. Leu*, 456 U.S. 431, 435 (1982), and *quoting Sadlowski*, 457 U.S. at 111.** In providing these protections, "Congress sought to further the basic objective of the LMRDA: 'ensuring that unions are democratically governed and responsive to the will of their memberships.'" ***Marshall*, 2010 WL 2853348 at *3, *quoting Lynn*, 488 U.S. at 352, and *Finnegan*, 456 U.S. at 436.**

So, a union member may sue when his § 101(a)(2) free speech rights have

been infringed, and one method of infringement occurs when the union member faces retaliation for exercising his right to free speech. To succeed on such a claim, the union member must establish that (1) he engaged in protected expression, (2) he was subjected to an adverse action reasonably likely to deter future expression, and (3) that action was caused by the protected expression. ***See Lynn*, 488 U.S. at 354**. These three prongs have been demonstrated here.

First – Price engaged in protected expression. He is a carpenter and a loyal union member. He earnestly believes that the Council should spend the union's money assisting carpenters, rather than electricians. Price believes that Nelson formed Local 57 to raid other unions (trying to capture electrical work that other unions historically did), and that this policy is detrimental to the future and the long-term goals of the Carpenters' union. Price also believes that Local 57 harms union solidarity and runs contra to the traditional notion of "brotherhood."

Price's display of the anti-Local 57 sticker without question is an expression of his views on a matter of union concern which relates to the general interest of the union membership and thus is protected free speech. Price's verbal comments regarding union leadership, Nelson's policies and Local 57 *and* his display of the anti-Local 57 sticker constitute expression on a matter of union concern. The LMRDA protects his right to express his views on such issues without fear or reprisal.

Second – Price was subjected to an adverse action reasonably likely to deter future expression. He has been formally charged and instructed by the Council to stand

trial. Not only does Price face a fine if unsuccessful at trial. The mere pendency of the disciplinary proceedings also limits Price's speech and deters him from openly expressing his views on union issues now and in the future.

Third – the adverse action was caused by the protected expression. Defendants acknowledge that the charges against Price directly resulted from his anti-Local 57 sticker display and his response when directed to remove the sticker. That sticker and Price's oral opposition to Defendant Nelson's policies (including support of Local 57) is protected expression which the LMRDA covers. As Price's brief correctly asserts: "But for the sticker and Plaintiff's speech, the business representative would not claim dissension" (Doc. 5, p. 11).

All three elements of an LMRDA claim have been shown, and Price has demonstrated a reasonable likelihood of success on his LMRDA claims.

Having found that Price has made his threshold showing for preliminary injunctive relief, the Court turns to the balancing analysis. Here, the Court weighs "the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." ***Girl Scouts*, 549 F.3d at 1086.**

And, where appropriate, the balancing process should also encompass any effects that granting (or denying) the injunction would have on non-parties, i.e., what is sometimes referred to as "the public interest." ***Id.***

The balance of harms tilts heavily in Price's favor. Without the preliminary

injunction, he faces a trial and likely fine because he exercised his right to free speech. This inhibits Price's (and other union members') protected speech. In contrast, Defendants face no irreparable harm if the Court grants the requested relief, cancels the October 2010 trial, and enjoins further action by Defendants until this matter can be fully resolved. Defendants suffer no economic injury and face minimal if any harm from the issuance of a preliminary injunction. They can continue to present their views in support of Local 57.

Furthermore, the preliminary injunction promotes the public interest. As the Seventh Circuit announced in ***Joelner*, 378 F.3d at 620:** "it is always in the public interest to protect First Amendment liberties." Enforcing free speech protections serves the public interest. That interest will be furthered by the issuance of a preliminary injunction in this case.

Next, the Court rejects Defendants' contention that Price's display of the sticker and expression of views constitutes "dual unionism," precluding it from being symbolic speech protected by the LMRDA. Simply put, dual unionism is "promoting a rival union" in a way that "impairs the ability of one's own union to carry out its collective bargaining responsibilities by diminishing its authority as bargaining representative." ***Aircraft Mechanics Fraternal Association v. Transport Workers Union of America, Local 514*, 98 F.3d 597, 598-600 (10th Cir. 1996).**

In ***Aircraft Mechanics*,** the Tenth Circuit described dual unionism as "the active promotion of a rival labor organization contrary to the interests of one's own union." ***Id.* at 601.** Dual unionism is itself a punishable offense "leveled at a union member or

officer who seeks or accepts membership or position in a rival union, or otherwise attempts to undermine a union by helping its rival." ***Id.*** Typically, this occurs where a member collects signatures for a rival union, files an election petition for a rival union, or distributes or encourages other individuals to sign cards authorizing a rival union to be their exclusive bargaining representative. ***Id.***

The record currently before this Court does *not* support the conclusion that Price engaged in dual unionism. Price is a proud and loyal member of his own Carpenters union who wants to preserve that union. He vehemently disagrees with certain policies advocated by his current union leaders – policies he believes are antithetical to the best interests of his beloved union.

But he is not sponsored by (or sponsoring) a rival union. He has not joined a rival union and is not encouraging others to do so. Nor is Price championing a rival union against his own union. His expression of anti-Local 57 views occurred squarely within the context of his desire to reform his own union's policies from within, *not* to undermine his union by helping a rival organization. He does not wish to belong to any other union, he wants to protect and restore what he believes are the core values, history and traditions of his own union.

Price voices legitimate concern that Defendants are advancing the interests of Local 57 *to the detriment of Local 638.* There has already been a jurisdictional dispute between the electricians and carpenters, as related in Defendants' brief and referenced in footnote 2 of this Order, regarding the installation of motorized shades at the Lumiere

Casino in St. Louis. Jurisdictional disputes – i.e., who gets to do what work – are not uncommon, and union leadership have an obligation to protect their turf to keep their members working and their trade viable.

Moreover, there are differing apprenticeships, licensing requirements and safety concerns between the trades. So the interests of one union are not necessarily the interests of another. For example, the laborers may be interested in increased safety in traffic work zones where their members work as flaggers, while the teachers may be interested in protecting tenure rights. Unions have finite resources, and an umbrella union representing multiple trades may impermissibly divide its loyalty by advancing one union's agenda over and at the expense of the other. Thus the rhetorical question on the bumper sticker at issue: "Who's Next?"

The evidence in the record does not persuade the undersigned Judge that Price engaged in dual unionism.

Finally, the Court is cognizant that the LMRDA contains an exhaustion provision. 29 U.S.C. § 411(a)(4) states that a union member "may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization" before instituting legal proceedings against the organizations or officers. The word "may" instead of "shall" signals that this requirement is discretionary. Counsel have acknowledged this discretion in the case *sub judice*, and the federal courts have so held. ***See, e.g., Stevens v. Northwest Indiana District Council, United Brotherhood of Carpenters*, 20 F.3d 720, n.28 (7th Cir. 1994)("Whether to excuse a failure to exhaust before**

**bringing an LMRDA suit is a matter within the court's discretion."); *N.L.R.B. v. Industrial Union of Marine and Shipbuilding Workers*, 391 U.S. 418, 426 (1968).**

In light of the core First Amendment freedoms at stake here, the undersigned Judge exercises this discretion, elects to relieve Price of the duty to exhaust before proceeding with this suit, and will permit judicial resolution to proceed immediately.[5]

D. Conclusion

Chief Justice Roberts of the United States Supreme Court has cautioned that preliminary injunctive relief is an extraordinary remedy, never awarded as of right, and only to be granted when the movant has made a clear showing of entitlement to relief. ***Winter*, 129 S. Ct. at 375-76.** Plaintiff Price has made that showing here.

Price has demonstrated that he has a reasonable likelihood of success on the merits of his claims, that no adequate remedy at law exists, and that he will suffer irreparable harm if the preliminary injunction is not issued. Moreover, the irreparable harm which Price will suffer without injunctive relief greatly exceeds the harm Defendants will suffer if the preliminary injunction is granted, and the preliminary injunction certainly will not harm the public interest. ***See St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).**

---

5 In March 2010, another Carpenters' union member, Guy Arens, was tried on similar charges (accused of causing dissension by wearing an anti-57 sticker) and fined $750. The District Council affirmed the fine (despite Price's vote against it (*see* Price Affidavit, Doc. 5-1, p. 3). As of the September 28, 2010 hearing, Arens' appeal of the fine still awaits ruling. This unduly long delay, with no ruling, weighs against requiring exhaustion in the instant case.

For these reasons, the Court **GRANTS** Price's motion for preliminary injunction (Doc. 4) as follows.

Defendants and any persons "in active concert or participation" with Defendants, **see Fed. R. Civ. P. 65(d)(2)(e),** are enjoined from:

(1) further processing the internal union charges against Plaintiff Price, requiring Price to provide the witness names/contact information by October 12, 2010, and holding the trial scheduled for October 19, 2010;

(2) infringing Plaintiff's right of free speech secured by § 101(a)(2) of the LMRDA and retaliating against Plaintiff in any manner for exercising this right;

(3) processing any other charges or discipline against Plaintiff or other union members for displaying anti-Local 57 stickers or otherwise voicing their opposition to Local 57.

Federal Rule of Civil Procedure 65(c) authorizes issuance of a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." ***See also Coyne-Delany Co., Inc. v. Capital Development Board,* 717 F.2d 385, 391 (7th Cir. 1983)(the discretion to waive Rule 65's bond requirement must be used sparingly, because it is a "dispensation narrowly construed in this circuit.").** The damages/penalty sought by the union is $750.00. Interest on that amount, if the Court has improvidently granted the injunction, is de minimis. Accordingly, the undersigned Judge **DIRECTS** Plaintiff to post a **$100 bond** herein.

IT IS SO ORDERED.

DATED October 8, 2010.

s/ ***Michael J. Reagan***
Michael J. Reagan
United States District Judge